**BROWN KWON & LAM, LLP**
Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **STEPHANIE FLORES,** *on behalf of herself and others similarly situated*, **Plaintiff,** - against - **DYNAMIC WIRELESS NYC LLC** **d/b/a METRO BY T-MOBILE, and** **SAMIR ACHIBAT,** **Defendants.** | **Case No: 21-cv-6160** **COLLECTIVE ACTION COMPLAINT** |

Plaintiff STEPHANIE FLORES ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, by and through her undersigned attorneys, hereby files this Collective Action Complaint against Defendants, DYNAMIC WIRELESS NYC LLC d/b/a METRO BY T-MOBILE (the "Corporate Defendant"), and SAMIR ACHIBAT (the "Individual Defendant," and together with the Corporate Defendant, the "Defendants") and alleges as follows:

**INTRODUCTION**

1.      Plaintiff brings this action on behalf of herself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from

Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unpaid wages due to time-shaving, (4) illegal wage deductions, (5) liquidated damages, and (6) attorneys' fees and costs.

2.      Plaintiff also brings this action on behalf of herself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, seeking from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unpaid spread of hours premium, (4) unpaid wages due to time-shaving, (5) illegal wage deductions, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

3.      Plaintiff further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that she was deprived of her statutory rights as a result of Defendants' discriminatory employment practices on the basis of disability and pregnancy, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

7.      Plaintiff STEPHANIE FLORES is an adult who resides in New York County, New York.

8.      Plaintiff is a covered employee within the meaning of the FLSA, NYLL, NYSHRL and NYSCHRL.

9.      Plaintiff retained Brown Kwon & Lam, LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

### *Defendants*

10.      At all relevant times, Defendants owned and operated a cellular business, under the tradenames "Metro PCS" and "Metro by T-Mobile" at the following addresses:

(i)      202 West 96th Street, New York, New York 10025; and

(ii)      1760 1st Avenue, New York, New York 10128.

(collectively referred to as "Metro").

11.      At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

12.      At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

13.      At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

### *DYNAMIC WIRELESS NYC LLC*

14.      Corporate Defendant DYNAMIC WIRELESS NYC LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of

business located at 202 West 96th Street, New York, New York 10025, and an address for service of process located at c/o Samir Achibat, 200 W 96th Street, New York, New York 10025.

15.     At all relevant times, DYNAMIC WIRELESS NYC LLC previously did business as "Metro PCS," and now does business as "Metro by T-Mobile."

16.     At all relevant times, DYNAMIC WIRELESS NYC LLC had an annual dollar volume of sales in excess of $500,000.

17.     DYNAMIC WIRELESS NYC LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

18.     At all relevant times, DYNAMIC WIRELESS NYC LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

19.     DYNAMIC WIRELESS NYC LLC applies the same employment policies, practices and procedures to all non-exempt employees at Metro.

20.     DYNAMIC WIRELESS NYC LLC is listed as the payor on pay stubs received by employees.

***SAMIR ACHIBAT***

21.     At all relevant times, Individual Defendant SAMIR ACHIBAT has been an owner and operator of Metro.

22.     At all relevant times, SAMIR ACHIBAT has been a principal of each of the Corporate Defendants.

23.     At all relevant times, SAMIR ACHIBAT has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Metro.

24.     At all relevant times, SAMIR ACHIBAT has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Metro.

25.     At all relevant times, SAMIR ACHIBAT has had the power to maintain employment records, including time and/or wage records of employees at Metro.

26.     At all relevant times, SAMIR ACHIBAT has been actively involved in managing the day to day operations of Metro.

27.     At all relevant times, SAMIR ACHIBAT has had authority over personnel or payroll decisions and employment policies, practices and procedures at Metro.

28.     At all relevant times, SAMIR ACHIBAT has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

29.     SAMIR ACHIBAT is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS
### (UNPAID WAGES)

30.     Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of herself and all similarly situated current and former non-exempt employees employed at Metro owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

31.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA

Collective Members their full wages for all hours worked, including overtime wages for all hours worked in excess of forty (40) per workweek. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

32.     All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

33.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

34.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## STATEMENT OF FACTS

### STEPHANIE FLORES

35.     In or around 2011, Defendants hired Plaintiff STEPHANIE FLORES as an assistant manager at "Metro PCS," located at 165 Loisaida Avenue, New York, New York 10009. In or around 2016, Defendants assigned Plaintiff STEPHANIE FLORES to work at the "Metro PCS," located at 202 West 96th Street, New York, New York 10025. From in or around 2018 through March 2020, Plaintiff worked interchangeably between Defendants' second Metro store, located at 1760 1st Avenue, New York, New York 10128 and the Metro store located at 202 West 96th Street, New York, New York 10025. From in or around April 2020 through on or about August 17, 2020, Plaintiff FLORES worked predominantly at Metro by T-Mobile located at 202 West 96th Street, New York, New York 10025. Plaintiff then worked for Defendants again from in or around October 2020 through on or about June 25, 2021. On or about June 25, 2021, Defendants terminated Plaintiff's employment.

6

36.     At all times, Plaintiff FLORES's duties as an assistant manager consisted of her opening and closing the store, counting inventory, selling cellphones and phone accessories, opening new customer accounts, and troubleshooting customer accounts. At all times, Plaintiff FLORES did not have the ability to hire or fire, discipline, supervise, or set schedules for employees. In fact, for most of her employment with Defendants, Plaintiff FLORES was paid below the prevailing New York minimum wage rate.

37.     From 2015 until on or about March 15, 2020, from in or around the months of September through June, Plaintiff regularly worked thirty (30) to thirty-eight (38) hours per week, working six (6) days per week, from either 12:00pm to 7:00pm or 1:00pm to 7:00pm. On occasion, Plaintiff worked overtime hours during the non-summer months when the store was short-staffed. In 2015, during the summer months from in or around June through September, Plaintiff regularly worked forty-eight (48) to sixty (60) hours per week, working six (6) days per week, from 10:00am to 8:00pm. From  2016, during the summer months from in or around June through September, Plaintiff regularly worked forty-eight (48) to fifty (50) hours per week, working six (6) days per week, from 11:00am to 7:00pm. At all times, Plaintiff worked without any clear or free meal breaks. Other similarly situated employees worked similar hours, including hours over forty (40) per workweek.

38.     In or around April 2020, Plaintiff FLORES regularly worked fifteen (15) to twenty (20) hours per week, working two (2) to three (3) days per week, from 11:00am to 6:00pm. Starting on or about May 15, 2020, Plaintiff FLORES worked twenty (20) to twenty-eight (28) hours per week, working five (5) days per week, from 10:00am to 3:00pm or 3:00pm to 7:00pm. Other similarly situated employees worked similar hours.

39.     In or around October 2020, Plaintiff FLORES regularly worked thirty (30) to thirty-five (35) hours per week, working approximately four (4) days per week, from either 10:30am to 3:30pm, 3:30pm to 7:00pm, 11:00am to 6:00pm or 12:00pm to 7:00pm. Other similarly situated employees worked similar hours.

40.     Throughout Plaintiff FLORES's employment, Plaintiff was not compensated for at least one (1) hour per week on Fridays. Individual Defendant regularly required Plaintiff and other similarly situated employees to stay late on Fridays to assist him with closing before he paid her and other employees their weekly pay. Plaintiff regularly complained of the underpayment but Individual Defendant did not change his policy. In fact, after a complaint by Plaintiff FLORES, Individual Defendant told her that it was a favor for him as a condition of her continued employment.

41.     Starting in or around January 2018, Defendants had a policy of deducting a half an hour of pay for lateness of five (5) to ten (10) minutes. Starting from January 2018, Defendants deducted Plaintiff FLORES for one (1) hour to one-and-a-half (1.5) hours per week for lateness. Other similarly situated employees were similarly deducted half an hour of their wages for being late five (5) to ten (10) minutes.

42.     During the summer of 2015, Plaintiff FLORES regularly worked days that exceeded a spread of ten (10) hours per workday. Plaintiff was not compensated with a spread of hours premium on such days that she worked over a spread of ten (10) hours. Other similarly situated employees similarly worked over ten (10) hours per workday and were not compensated their spread of hours premium.

43.     Prior to 2014, before the NYLL statutory period, Plaintiff FLORES was paid entirely in cash. Starting in or around 2014, Defendants compensated Plaintiff in part by cash and

in part by check. From 2015, Plaintiff was paid $8.50 per hour. From January 2016, Plaintiff was paid $8.50 per hour. From January 2017, Plaintiff was paid $10.50 per hour. From January 2018, Plaintiff was paid $11.50 per hour. From January 2019, Plaintiff was paid $12.00 per hour. From January 2020 until in or around March 2020, Plaintiff was paid $13.00 per hour. From on or about April 13, 2020, Plaintiff was paid $15.00 per hour. From on or about May 8, 2020 until in or around August 2020, Plaintiff was paid $14.00 per hour. From in or around October 2020, Plaintiff was paid $15.00 per hour. At all times, Plaintiff was paid on a straight-time basis for all paid hours worked, including any overtime hours worked per workweek. Other similarly situated employees were paid at similar hourly rates on a straight-time basis.

44.     Starting in or around 2014, Defendants started compensating Plaintiff FLORES and other similarly situated employees in part by cash and in part by check. Since Defendants started compensating Plaintiff and other employees in part by check, Plaintiff and other similarly situated employees were deducted a cash amount on a weekly basis. In 2015, Plaintiff was deducted $150 on a weekly basis, and paid $300 biweekly by check. From 2016 until the end of Plaintiff's employment, she was deducted $175 on a weekly basis, and paid $350 biweekly by check. During weeks in which Plaintiff did not earn $150 in 2015, and $175 from 2016, Plaintiff was still required to pay Defendants back for the difference. On occasion, Individual Defendant would issue the check under Plaintiff's names but deposit the check into his own account or request that they deposit the check and pay him back with cash.

45.     Throughout Plaintiff FLORES's employment with Defendants, Individual Defendant further made random, unexplained illegal deductions, and/or refused to pay Plaintiff, including the following:

a. In 2016, after Individual Defendant returned from his Morocco trip, he arbitrarily claimed that he overpaid Plaintiff FLORES $1,000 and deducted random amounts over a six-month period to reclaim the $1,000. Plaintiff was not provided any basis or documentation for the "purported overpayment."

b. Throughout Plaintiff's employment, she was deducted between $20 and $150 every two weeks for cash shortages even though Individual Defendant regularly took money from the register without making any notations of the amount he took. On average, Plaintiff was deducted a minimum of $10, every two weeks.

c. Throughout Plaintiff's employment, she was deducted a total of approximately $120 to compensate Defendants for fake bills.

46. Defendants had a system of incentive pay for commission when employees opened new accounts or sold new phones, among other incentives. From October through December 2019, Plaintiff FLORES earned but was not paid approximately $300 worth of commission.

47. At all relevant times, Defendants had a policy that regularly compensated Plaintiff and similarly situated employees at hourly rates below even that of the prevailing New York Minimum Wage Rate for all hours worked.

48. At all relevant times, Defendants had a policy that compensated Plaintiff and similarly situated employees on a straight-time basis for all hours worked, including hours worked over forty (40) per workweek, and failed to compensate her for her overtime premium at time-and-a-half.

49. At all relevant times, Defendants had a time-shaving policy of not compensating Plaintiff and similarly situated employees for all hours worked. Defendants failed to compensate Plaintiff for an hour of work per week for closing on Friday nights and deducted half an hour per

day for lateness several times per week. Plaintiff and similarly situated employees are owed anywhere between one (1) hour, up to four (4) hours per workweek.

50.     At all relevant times, when Plaintiff and similarly situated employees worked over ten (10) hours per workday, Defendants had a policy of not paying them a spread of hours premium at the prevailing New York minimum wage rate.

51.     At all relevant times, Defendants took illegal wage deductions, including for cash shortages, repayment of employer losses (theft), and others, in violation of the NYLL.

52.     At all relevant times, Defendants had a system of incentive pay. However, Defendants failed to compensate Plaintiff and similarly situated employees for commission earned according to Defendants' incentive pay scale.

53.     Throughout their employment with Defendants, Plaintiff and similarly situated employees did not receive proper notices of pay rate or pay day from Defendants, as required under the NYLL.

54.     At all relevant times, Plaintiff and other similarly situated employees were either not provided any wage statements or they were provided improper wage statements from Defendants. When wage statements were provided, they were improper because the wage statements failed to include employees' full wages, actual rates of pay, Defendants' telephone number, among others.

55.     Based on Plaintiff's observations and conversations with other similarly situated employees, Plaintiff and FLSA Collective Members were similarly paid on an hourly basis at rates that were regularly below that of the prevailing New York State minimum wage rate.

56.     Based on Plaintiff's observations and conversations with other similarly situated employees, Defendants paid wages to Plaintiff and FLSA Collective Members on a straight-time basis and did not pay overtime premium for hours worked over forty (40) in a workweek.

57.     Based on Plaintiff's observations and conversations with other similarly situated employees, Defendants failed to keep accurate records of actual hours worked by their employees at any of Individual Defendants' Metro stores.

58.     Based on Plaintiff's observations and conversations with other similarly situated employees, Plaintiff and FLSA Collective Members similarly suffered from Defendants' policies of time-shaving and did not receive full and proper wages for all hours worked.

59.     Based on Plaintiff's observations and conversations with other similarly situated employees, Plaintiff and FLSA Collective Members similarly suffered from Defendants' policies of illegal wage deductions.

60.     Based on Plaintiff's observations and conversations with other similarly situated employees, Plaintiff and FLSA Collective Members similarly suffered from Defendants' policies of failing to pay them earned commission according to Defendants' incentive pay scale.

61.     Based on Plaintiff's observations and conversations with other similarly situated employees, Defendants failed to provide proper wage notices to Plaintiff and FLSA Collective Members.

62.     Based on Plaintiff's observations and conversations with other similarly situated employees, Defendants failed to provide proper wage statements to Plaintiff and FLSA Collective Members. Wage statements were either not provided at all or they were improper. The wage statements that were provided to Plaintiff and FLSA Collective Members failed to accurately

reflect the employees' actual hours worked, failed to provide their actual rates of pay, and failed to state other required information.

63.     Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiff and FLSA Collective Members, in violation of the NYLL.

64.     Defendants knowingly and willfully operated their business with a policy of failing to pay overtime premium to Plaintiff and FLSA Collective Members for hours worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL.

65.     Defendants knowingly and willfully operated their business with a policy of failing to pay the full and proper wages to Plaintiff and FLSA Collective Members for all hours worked, in violation of the FLSA and NYLL.

66.     Defendants knowingly and willfully operated their business with a policy of failing to pay the spread-of-hours premium to Plaintiff and FLSA Collective Members, in violation of the NYLL.

67.     Defendants knowingly and willfully operated their business with a policy of taking illegal wage deductions, in violation of the NYLL.

68.     Defendants knowingly and willfully operated their business with a policy of refusing to compensate Plaintiff and FLSA Collective Members their earned commission pay.

69.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff and FLSA Collective Members pursuant to the requirements of the NYLL.

70.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and FLSA Collective Members pursuant to the requirements of the NYLL.

*               *               *

***PREGNANCY DISCRIMINATION***

71.     In or around March 2021, Plaintiff informed Individual Defendant that she was pregnant and that it was a high-risk pregnancy. On occasion, Plaintiff was required to take off for pregnancy-related appointments, however, Individual Defendant would regularly request that she cancel and reschedule them. As a result, Plaintiff missed several pregnancy-related appointments due to the cancellations. The week of or around June 25, 2021, Plaintiff was unable to work due to her high-risk pregnancy and requested several days off. Plaintiff informed Individual Defendant that she could provide medical documentation upon request. However, Individual Defendant did not respond thereafter. When Plaintiff requested her schedule after a few days, Individual Defendant blocked her, did not respond to her, and as such, constructively terminated her.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

72.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

73.     The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

74.     Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

75.     Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage and overtime wages for all hours worked due to Defendants' time-shaving of employees' hours worked.

76.     Defendants failed to pay Plaintiff and FLSA Collective Members all wages owed due to illegal wage deductions.

77.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

78.     Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage and overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

79.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

80.     As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied minimum wage and overtime wages and subjected to illegal wage deductions in violation of the FLSA, in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

81.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

82.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

83.     At all times relevant, Plaintiff has been an employee of Defendants, and Defendants have been employers of Plaintiff within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

84.     Defendants failed to pay Plaintiff the minimum wage, to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations

85.     Defendants failed to pay Plaintiff proper overtime wages to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

86.     Defendants failed to pay Plaintiff the full and proper wages for all hours worked due to Defendants' time-shaving of employees' hours worked.

87.     Defendants failed to pay Plaintiff the full and proper wages for all hours worked.

88.     Defendants failed to pay spread-of-hours premium for hours worked in excess of ten (10) per workday.

89.     Defendants further subjected Plaintiff to improper wage deductions throughout her employment.

90.    Defendants failed to furnish Plaintiff with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

91.    Defendants failed to furnish Plaintiff with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

92.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff as required by the NYLL and the supporting New York State Department of Labor Regulations.

93.    Defendants failed to properly disclose or apprise Plaintiff of her rights under the NYLL and the supporting New York State Department of Labor Regulations.

94.    As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid minimum wages, unpaid overtime wages, unpaid wages due

to time-shaving of employees' hours worked, unpaid spread of hours, illegal wage deductions, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## COUNT III

## <u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>

95.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

96.     Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

97.     Defendants violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by engaging in discriminatory employment practices, including terminating her employment on the basis of her pregnancy.

98.     Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

99.     As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

100.    Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

**COUNT IV**

**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
(FAILURE TO ACCOMMODATE)**

101.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102.    Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

103.    Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee." NYSHRL § 296(3)(a). Defendants violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by being aware of and failing to reasonably accommodate Plaintiff's request for an accommodation based on her pregnancy. Defendants were aware of Plaintiff's pregnant condition, Plaintiff requested a reasonable accommodation related to her pregnancy-related condition that would not impose an undue hardship on Defendants' business, and Defendants refused to provide an accommodation for her.

104.    At minimum, Defendants were required to engage in an individualized and interactive process regarding Plaintiff's request for a reasonable accommodation but Defendants failed to do so.

105.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

106.    As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

107.    Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## COUNT V

## <u>VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW</u>

108.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

109.    Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

110.    Defendants violated Plaintiff's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by treating her less well than Defendants' other employees on the basis of her pregnancy. Defendants engaged in discriminatory employment practices, including terminating her employment on the basis of her pregnancy.

111.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

112.    As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

113.    Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

**COUNT VI**

**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
(FAILURE TO ACCOMMODATE)**

114.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

115.     Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

116.     Under the NYCHRL, "[i]t shall be an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation, as defined in section 8-102, to the needs of an employee for the employee's pregnancy, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job." Administrative Code of the City of New York § 8-107(22)(a) and (28). Defendants violated Plaintiff's statutorily protected rights under the NYCHRL by being aware of and failing to reasonably accommodate Plaintiff's pregnancy-related accommodation request. Defendants were aware of Plaintiff's pregnant condition, Plaintiff requested a reasonable accommodation related to her pregnancy-related condition that would not impose an undue hardship on Defendants' business, and Defendants refused to provide an accommodation for her.

117.     At minimum, Defendants were required to engage in a "cooperative dialogue" regarding Plaintiff's request for a reasonable accommodation but Defendants failed to do so.

118.     Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

119.     As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

120. Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, and FLSA Collective Members, respectfully requests that this Court grant the following relief:

a. Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b. An award of unpaid minimum wage and overtime premium, in violation of the FLSA and NYLL;

c. An award of unpaid wages resulting from Defendants' failure to pay wages for all hours worked, in violation of the FLSA and NYLL;

d. An award for unpaid spread of hours, pursuant to the NYLL;

e. An award for reimbursement of illegal wage deductions and unpaid commission;

f. An award of liquidated damages as a result of Defendants' willful failure to pay full and proper wages for all hours worked, pursuant to the FLSA or NYLL;

g. Statutory penalties for Defendants' failure to provide proper wage notices, as required by the NYLL;

h. Statutory penalties for Defendants' failure to provide proper wage statements, as required by the NYLL;

i. An order awarding relief for Defendants' discriminatory conduct, including but not limited to economic, compensatory and punitive damages;

j. Pre-judgment and post-judgment interest;

k.  Reasonable attorneys' fees and costs of this action;

l.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

m.  A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL and NYCHRL;

n.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

o.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  July 19, 2021                    Respectfully submitted,

                                      **BROWN KWON & LAM, LLP**

                            By:    */s/ Clara Lam*

                                        Clara Lam, Esq. (CL6399)
                                        521 Fifth Avenue, 17th Floor
                                        New York, NY 10175
                                        Tel.: (718) 971-0326
                                        Fax: (718) 795-1642
                                        clam@bkllawyers.com
                                        *Attorneys for Plaintiff*

## **CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT**

I, STEPHANIE FLORES hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in

an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against DYNAMIC

WIRELESS NYC LLC d/b/a METRO BY T-MOBILE and SAMIR ACHIBAT, and/or related

entities and individuals to recover unpaid wages, liquidated damages, and other damages and relief

available under the Fair Labor Standards Act.


DocuSigned by:

*Stephanie*

E8C8D7F8AD57444...

Name: STEPHANIE FLORES


                        7/15/2021

Date: _____