BROWN
KWON &
LAM LLP

Brown Kwon & Lam LLP
Attorneys at Law
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
Email: info@bkllawyers.com

March 14, 2022

**Via ECF**
Hon. Ona T. Wang, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      RE:  *Flores v. Dynamic Wireless NYC LLC d/b/a Metro by T-Mobile, et al.*
         Case No. 1:21-cv-6160(AJN)(OTW)

Dear Judge Wang:

  This firm represents Plaintiff Stephanie Flores in the above-referenced matter. We write, jointly with counsel for Defendants, to respectfully request judicial approval of the parties' settlement agreement, attached hereto as **Exhibit A** (the "Agreement"), pursuant to *Cheeks v. Freeport Pancake House*, 796 F. 3d 199 (2d Cir. 2015). The Agreement resolves Plaintiff's claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for the total amount of $10,000.00. As part of this motion, Plaintiff's counsel requests one-third (1/3) in attorneys' fees ($3,182.65) plus costs ($452.00) from the total settlement amount. For the reasons outlined below, the Court should approve this $10,000.00 settlement as a fair and reasonable compromise of Plaintiff's claims against Defendants.

## BACKGROUND

  On July 19, 2021, Plaintiff commenced this action, alleging that Defendants failed to compensate Plaintiff for all of her hours worked, including overtime wages, at the prevailing New York State minimum wage rate and her overtime rate of time-and-a-half, in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff additionally alleged that she was subjected to illegal wage deductions pursuant to the FLSA and NYLL, as well as additional wage violations such as unpaid spread of hours and statutory damages for failure to provide wage notices and proper wage statements. Plaintiff further alleged that Defendants engaged in discriminatory employment practices on the basis of pregnancy discrimination, including the termination of her employment on the basis of her pregnant status, in violation of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

  On January 28, 2022, the Parties participated in S.D.N.Y. Mediation Program. In an effort to facilitate resolution, the parties engaged in informal discovery, including Defendants' production of financial and tax documents relevant to Defendants' inability to pay defense, and Plaintiff provided damages calculations. On or about February 8, 2022, the parties successfully reached a settlement in principle.

The parties' formal settlement agreement was fully executed on March 11, 2022. See **Exhibit A**. Although this lawsuit was initiated as a putative collective action, a collective action was never conditionally certified and there were no opt-in plaintiffs in this action. Accordingly, the proposed Agreement is limited to the release of Plaintiff Stephanie Flores's individual wage claims, and does not release any claims of the putative collective members.

## **THE SETTLEMENT IS FAIR AND REASONABLE**

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 US Dist LEXIS 20963, at *13 (S.D.N.Y. Feb. 8, 2019) (internal quotation marks omitted).

Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335. Based on these factors, the proposed settlement should be approved as fair and reasonable.

### A. Plaintiff's Range of Possible Recovery

The first factor weighs in favor of approval. Based on estimated damages calculations, Plaintiff's range of possible recovery was between $0 and $53,063.50. In a best-case scenario, assuming that all of the disputed facts alleged by Plaintiff are entirely correct and that Plaintiff would prevail on all claims, Plaintiff's calculation of damages amounts to $53,063.50, representing $20,043.75 in unpaid wages, $20,043.75 in liquidated damages, $2,976.00 in estimated damages for illegal wage deductions, and $10,000.00 in statutory damages pursuant to the Wage and Theft Prevention Act ("WTPA"). See **Exhibit B** for Plaintiff's assumptions and calculation of damages.

The $10,000.00 settlement amount provides a significant recovery, nearly 50% of Plaintiff's best-case, owed wages, not including any liquidated damages, penalties or improper wage deductions. Comparatively, the $10,000.00 settlement amount is nearly 43% of Plaintiff's best-case, owed wages plus her estimated wage deductions, not including any liquidated damages or penalties. In light of the litigation risks discussed below, this settlement recovery is a fair and reasonable result.

### B. Litigation Costs and Risks

The second and third factors also favor approval. If the parties were to continue litigation, the parties would need to conduct full discovery, including production of documents and depositions of all parties. Moreover, this would require extensive legal briefing from both sides.

2

As such, further litigation would require significant time and expense. In addition, both sides face serious litigation risks relating to damages and liability.

Defendants maintain that Plaintiff was at all times paid properly for all hours worked. Plaintiff's position, on the other hand, is that Defendants did not compensate her properly for all hours worked and that Defendants will likely be unable to produce any records to demonstrate that they properly compensated Plaintiff for all hours worked, at the proper minimum wage and overtime rate. Nonetheless, both sides face serious litigation risks relating to damages and liability, including establishing Plaintiff's actual hours worked and actual hours paid due to Defendants compensating Plaintiff in part in cash, and in part by wage statements. While Plaintiff is confident that she would ultimately be able to establish liability, this would require significant time and prolonged litigation, including extensive testimony to determine her hours worked and pay rate.

Litigation costs aside, one of the main driving factors in approving the settlement agreement and its long payment plan is Defendants' assertion of an inability to pay defense. For mediation, Defendants provided Individual Defendant Samir Achibat's individual tax returns for the calendar years 2016 through 2019, each of which included a Schedule C for profit and loss from a business for Corporate Defendant Dynamic Wireless NYC; bank statements; credit card statements; and a notarized statement from Individual Defendant Samir Achibat that he (1) did not own real property and (2) possessed a five-figure personal loan from family members to assist him with college tuition for his children. Defendants further supplemented the production with Mr. Achibat's 2020 individual tax return.

Based on an analysis of these records, Corporate Defendant was operating at a net loss for a majority of the tax calendar years from 2016 through 2020. Even in the years when it operated at a net profit, the net profit consisted of only a few thousands of dollars. Mr. Achibat's bank statements and individual tax returns also confirm that it is unlikely that he individually has the means to compensate Plaintiff for a larger settlement and that he was indeed issuing check payments for rent. Lastly, in or around 2021, Mr. Achibat closed one of his two remaining cellular services stores. Given the risk of an inability to collect on a future judgment, Plaintiff therefore acknowledges that there is significant risk in proceeding with litigation.

Accordingly, Plaintiff believes it to be in her best interest to receive the settlement payment rather than escalate the costs, burdens, and risks of further litigation and trial. Plaintiff believes that the settlement amount is a fair result, accounting for a significant percentage of the alleged back wages owed, even after the deduction of attorneys' fees and costs, while eliminating the burdens and risks of trial.

### C. Arm's-Length Bargaining and Lack of Fraud or Collusion

The fourth and fifth factors also weigh in favor of approval. Plaintiff's counsel and Defendants' counsel have negotiated at arm's length with the assistance of the court-assigned mediator, Mr. Richard Leland, through the S.D.N.Y. Mediation Program. In addition, both parties' counsel have significant experience handling wage and hour claims. Moreover, the settlement is the product of arm's-length bargaining as the settlement amount represents a significant percentage of Plaintiff's potential recovery – 50% of her estimated unpaid wages under the best-case scenario.

Further, the red-flag issues identified in *Cheeks* are not present here. The Agreement does not contain an overly broad general release, or a confidentiality or non-disparagement provision.

See **Exhibit A**. In order to resolve Plaintiff's non-wage claims, including her discrimination claims under the NYSHRL and NYCHRL, the parties have entered into a separate agreement, also dated March 11, 2022. This separate agreement contains a general release, but no confidentiality clause, as such, it does not contain any type of clauses that would prevent Plaintiff from discussing the settlement of her FLSA and NYLL claims. *See Chowdhury v. Brioni Am., Inc*., No. 16 Civ. 344, 2017 U.S. Dist. LEXIS 196469, at *13 (S.D.N.Y. Nov. 29, 2017) ("Judges in this District routinely approve bifurcated settlement agreements, in which the parties submit their FLSA agreement for court review and approval but enter into a separate agreement that addresses the non-FLSA claims, which does not require judicial [review and approval] and may contain provisions that would be impermissible under *Cheeks*.") (citing *Ortiz v. Breadroll, LLC*, No. 16 Civ. 7998, 2017 U.S. Dist. LEXIS 73657, at *4-5 (S.D.N.Y. May 15, 2017); *Santos v. Yellowstone Props., Inc*., No. 15 Civ. 3986, 2016 U.S. Dist. LEXIS 61994, at *3, n. 1 (S.D.N.Y. May 10, 2016) (approving bifurcated settlement agreements, one resolving plaintiff's FLSA claims and the other privately resolving plaintiff's discrimination claims and containing a general release).

Lastly, as will be discussed below, Plaintiff's counsel's requested attorneys' fees are not excessive as they only seek one-third of the settlement, which is typical of FLSA cases. The parties' separate agreement for the release of Plaintiff's non-wage claims also provides for attorneys' fees in the amount of one-third of the settlement amount. Based on the foregoing, there is no evidence of fraud or collusion. Therefore, Plaintiff respectfully requests that the Court find that the Agreement is a "fair and reasonable" compromise of her FLSA claims against Defendants and approve the settlement.

## THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE

Plaintiff further seeks approval of attorneys' fees and costs. In accordance with Plaintiff's contingency-fee basis retainer agreement with Plaintiff's counsel, the Agreement provides that Plaintiff's counsel will recover $3,634.65, equaling (i) $452.00 in reimbursement of costs (i.e., ECF filing fee and service of process cost) and (ii) $3,182,65 in attorneys' fees, which is one-third of the $10,000.00 settlement amount after deduction of the $452.00 in costs. See **Exhibit A**. The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiff in her retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with representation.

Plaintiff's counsel has worked without any compensation to date, and Plaintiff's counsel's fees have been wholly contingent upon the result achieved. As of the date of this filing, Plaintiff's counsel has spent approximately 40.6 hours investigating, researching, and litigating Plaintiff's claims, participating in mediation, and negotiating and executing the settlement, for a lodestar of $16,240.00. See **Exhibit C** for Plaintiff's counsel's contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done, and an itemization of costs. *See Wolinsky*, 900 F. Supp. at 336.

Plaintiff's counsel's request for attorneys' fees in the amount of one-third of the settlement amount is fair and reasonable. "[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp*., No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, at *5 (S.D.N.Y. Dec. 14, 2015); *see also Ramirez v. Greenside Corp*., No. 16 Civ. 726, 2017 U.S. Dist. LEXIS 30527, at *9 (S.D.N.Y. Mar. 3, 2017) (stating "contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Leon v. Univ. 45 Fruit & Vegetable Corp*., No. 19 Civ. 8266, 2020 U.S. Dist. LEXIS 48716, at *5 (S.D.N.Y. Mar. 20, 2020)

(finding the amount of the fee award reasonable where "the attorneys' fees amount is approximately 33% of the [ ] settlement amount after costs").

      Lastly, Plaintiff's counsel expended $452.00 on the ECF filing fee and cost for service of process. *See* **Exhibit C**. These costs are commonly reimbursed by courts in this District. *See e.g.*, *Chamoro v. 293 3rd Cafe Inc.*, No. 16 Civ. 339, 2016 U.S. Dist. LEXIS 136101, at *9-10 (S.D.N.Y. Sep. 30, 2016) (holding that court filing fees, service of process, costs of mailing, legal research, and other litigation costs are generally recoverable). As such, Plaintiff's counsel's attorneys' fees and costs are fair and reasonable and should be approved by the Court.

                      \*                        \*                       \*

      For the foregoing reasons, Plaintiff respectfully requests that the Court approve the attached settlement agreement. We thank the Court for its time and consideration.

                        Respectfully submitted,

                        */s/ Clara Lam*

                        Clara Lam, Esq.
                        clam@bkllawyers.com

cc:      all parties via ECF